**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| SIERRA CLUB, AIR ALLIANCE HOUSTON, HEALTHY GULF, and CONCERNED CITIZENS AROUND MURPHY,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, in his official capacity as Administrator of the United States Environmental Protection Agency,<br><br>Respondents. | No. 25-1227 |

**PETITION FOR REVIEW**

Pursuant to Clean Air Act § 307(b)(1), 42 U.S.C. § 7607(b)(1), Rule 15 of the Federal Rules of Appellate Procedure, and Circuit Rule 15, Sierra Club, Air Alliance Houston, Healthy Gulf, and Concerned Citizens Around Murphy hereby petition this Court to review of the final action (including the promulgation of regulations) taken by Respondents at 90 Fed. Reg. 41,508 (Aug. 26, 2025) and entitled "Commercial and Industrial Solid Waste Incineration Units: Temporary Use Incinerators and Air Curtain Incinerators Used In Disaster Recovery Interim Final Rule; request for Comment" (Attachment A).

Dated: October 24, 2025

Respectfully submitted,

/s/ John E. Bies
John E. Bies
James S. Pew
Earthjustice
1001 G Street, NW
Suite 1000
Washington, DC 20001
Phone: (202) 667-4500
jbies@earthjustice.org
jpew@earthjustice.org

*Counsel for Sierra Club, Air Alliance Houston, Healthy Gulf, and Concerned Citizens Around Murphy*

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| SIERRA CLUB, AIR ALLIANCE HOUSTON, HEALTHY GULF, and CONCERNED CITIZENS AROUND MURPHY,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, in his official capacity as Administrator of the United States Environmental Protection Agency,<br><br>Respondents. | No. 25-1227 |

**RULE 26.1 DISCLOSURE STATEMENT OF SIERRA CLUB**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Petitioner Sierra Club makes the following disclosures:

Sierra Club states that they are a non-governmental organization with no parent companies, and no publicly held corporation has a ten percent or greater ownership interest in Sierra Club.

Sierra Club, is a nonprofit corporation organized and existing under the laws of the State of California, and Sierra Club's general nature and purpose is dedicated to the protection and enjoyment of the environment.

Dated: October 24, 2025

Respectfully submitted,

/s/ John E. Bies
John E. Bies
James S. Pew
Earthjustice
1001 G Street, NW
Suite 1000
Washington, DC 20001
Phone: (202) 667-4500
jbies@earthjustice.org
jpew@earthjustice.org

*Counsel for Sierra Club, Air Alliance Houston, Healthy Gulf, and Concerned Citizens Around Murphy*

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| SIERRA CLUB, AIR ALLIANCE HOUSTON, HEALTHY GULF, and CONCERNED CITIZENS AROUND MURPHY,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, in his official capacity as Administrator of the United States Environmental Protection Agency,<br><br>Respondents. | No. 25-1227 |

**RULE 26.1 DISCLOSURE STATEMENT OF**
**AIR ALLIANCE HOUSTON**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Petitioner Air Alliance Houston makes the following disclosures:

Air Alliance Houston states that they are a non-governmental organization with no parent companies, and no publicly held corporation owns ten percent or greater ownership interest in Air Alliance Houston.

Air Alliance Houston is a nonprofit organization organized and existing under the laws of Texas. The general nature and purpose of the organization is

working to reduce the public health impacts from air pollution and advance environmental justice.

Dated: October 24, 2025

Respectfully submitted,

/s/ John E. Bies
John E. Bies
James S. Pew
Earthjustice
1001 G Street, NW
Suite 1000
Washington, DC 20001
Phone: (202) 667-4500
jbies@earthjustice.org
jpew@earthjustice.org

*Counsel for Sierra Club, Air Alliance Houston, Healthy Gulf, and Concerned Citizens Around Murphy*

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| SIERRA CLUB, AIR ALLIANCE HOUSTON, HEALTHY GULF, and CONCERNED CITIZENS AROUND MURPHY,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, in his official capacity as Administrator of the United States Environmental Protection Agency,<br><br>Respondents. | No. 25-1227 |

**RULE 26.1 DISCLOSURE STATEMENT OF HEALTHY GULF**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Petitioner Healthy Gulf makes the following disclosures:

Healthy Gulf Toxics states that they are a non-governmental organization with no parent companies, and no publicly held corporation owns ten percent or greater ownership interest in Healthy Gulf.

Healthy Gulf is a nonprofit organization organized and existing under the laws of Louisiana. The general nature and purpose of the organization is

environmental advocacy with the stated purpose to collaborate with and serve communities who love the Gulf of Mexico by providing the research, communications, and coalition-building tools needed to reverse the long pattern of over exploitation of the Gulf's natural resources.

Dated: October 24, 2025

Respectfully submitted,

/s/ John E. Bies
John E. Bies
James S. Pew
Earthjustice
1001 G Street, NW
Suite 1000
Washington, DC 20001
Phone: (202) 667-4500
jbies@earthjustice.org
jpew@earthjustice.org

*Counsel for Sierra Club, Air Alliance Houston, Healthy Gulf, and Concerned Citizens Around Murphy*

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| SIERRA CLUB, AIR ALLIANCE HOUSTON, HEALTHY GULF, and CONCERNED CITIZENS AROUND MURPHY,<br><br>Petitioners,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, in his official capacity as Administrator of the United States Environmental Protection Agency,<br><br>Respondents. | No. 25-1227 |

**RULE 26.1 DISCLOSURE STATEMENT OF CONCERNED CITIZENS AROUND MURPHY**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Petitioner Concerned Citizens Around Murphy makes the following disclosures:

Concerned Citizens Around Murphy states that they are a non-governmental organization with no parent companies, and no publicly held corporation has a ten percent or greater ownership interest in Concerned Citizens Around Murphy.

Concerned Citizens Around Murphy is a nonprofit corporation organized and existing under the laws of the State of Louisiana, and Concerned Citizens

Around Murphy's general nature and purpose is to serve as an association of residents whose members are dedicated to revitalize St. Bernard Parish and renew the environment through public participation and resident advocacy.

Dated: October 24, 2025

Respectfully submitted,

/s/ John E. Bies
John E. Bies
James S. Pew
Earthjustice
1001 G Street, NW
Suite 1000
Washington, DC 20001
Phone: (202) 667-4500
jbies@earthjustice.org
jpew@earthjustice.org

*Counsel for Sierra Club, Air Alliance Houston, Healthy Gulf, and Concerned Citizens Around Murphy*

## CERTIFICATE OF SERVICE

I hereby certify that I have served copies of the foregoing Petition for Review and Rule 26.1 Disclosure Statements on Respondents by sending a copy via First Class Mail to each of the following addresses on this 24th day of October, 2025:

Lee Zeldin, Administrator
U.S. Environmental Protection Agency
Office of the Administrator, 1101A
1200 Pennsylvania Avenue, NW
Washington, DC 20460

Correspondence Control Unit
Office of General Counsel (2311)
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, DC 20460

Pamela Bondi
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Dated: October 24, 2025

/s/ John E. Bies
John E. Bies

# ATTACHMENT A



*Designated representative* means any Coast Guard commissioned, warrant, or petty officer, including a Coast Guard coxswain, petty officer, or other officer operating a Coast Guard vessel and a Federal, State, and local officer designated by or assisting the Captain of the Port Maryland-National Capital Region (COTP) in the enforcement of the security zone.

(c) *Regulations.* (1) Under the general safety zone regulations in subpart D of this part, you may not enter the safety zone described in paragraph (a) of this section unless authorized by the COTP or the COTP's designated representative.

(2) To seek permission to enter, contact the COTP or the COTP's representative by telephone number 410–576–2693 or on Marine Band Radio VHF–FM channel 16 (156.8 MHz). Those in the safety zone must comply with all lawful orders or directions given to them by the COTP or the COTP's designated representative.

(d) *Enforcement periods.* This section will be enforced from August 20, 2025 until September 15, 2025, or earlier upon the safe departure or repair of the vessel.

Dated: August 20, 2025.

**Patrick C. Burkett,**

*Captain, U.S. Coast Guard, Captain of the Port Sector Maryland-National Capital Region.*

[FR Doc. 2025–16354 Filed 8–25–25; 8:45 am]

**BILLING CODE 9110–04–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Parts 60 and 62

**[EPA–HQ–OAR–2003–0119; FRL–12232–03–OAR]**

**RIN 2060–AW43**

### Commercial and Industrial Solid Waste Incineration Units: Temporary-Use Incinerators and Air Curtain Incinerators Used in Disaster Recovery

**AGENCY:** Environmental Protection Agency (EPA).

**ACTION:** Interim final rule; request for comment.

**SUMMARY:** The U.S. Environmental Protection Agency (EPA) is taking interim final action to provide for the temporary use of incineration units subject to commercial and industrial solid waste incinerator (CISWI) regulations during disaster recovery. Currently, only other solid waste incinerators (OSWI) are authorized to combust debris from a disaster or emergency on a temporary basis without having to comply with applicable Clean Air Act (CAA) section 129 requirements. We are also authorizing such temporary use for incinerators (including air curtain incinerators (ACI)) subject to CISWI regulations by adding temporary-use provisions that essentially mirror those in the OSWI regulations to existing Federal CISWI rule subparts. The EPA is requesting comments on all aspects of this interim final rule and will consider all comments received after the conclusion of the comment period.

**DATES:** This interim final rule is effective on August 26, 2025. Comments on this rule must be received on or by October 10, 2025.

*Public Hearing.* If anyone contacts us requesting a public hearing on or before August 31, 2025, the EPA will hold a virtual public hearing on September 10, 2025. See the **SUPPLEMENTARY INFORMATION** section for information on requesting and registering for a public hearing.

**ADDRESSES:** You may send comments, identified by Docket ID No. EPA–HQ–OAR–2003–0119, by any of the following methods:

- *Federal eRulemaking Portal: www.regulations.gov* (our preferred method). Follow the online instructions for submitting comments.
- *Email: a-and-r-docket@epa.gov.* Include Docket ID No. EPA–HQ–OAR–2003–0119 in the subject line of the message.
- *Mail:* U.S. Environmental Protection Agency, EPA Docket Center, Docket ID No. EPA–HQ–OAR–2003–0119, Mail Code 28221T, 1200 Pennsylvania Avenue NW, Washington, DC 20460.
- *Hand/Courier Delivery:* EPA Docket Center, WJC West Building, Room 3334, 1301 Constitution Avenue NW, Washington, DC 20004. The Docket Center's hours of operation are 8:30 a.m.–4:30 p.m., Monday–Friday (except Federal holidays).

*Instructions:* All submissions received must include the Docket ID No. for this rule. Comments received may be posted without change to *www.regulations.gov,* including any personal information provided. For detailed instructions on sending comments and additional information on the rulemaking process, see the **SUPPLEMENTARY INFORMATION** section of this document.

**FOR FURTHER INFORMATION CONTACT:** For questions about the rule regarding the temporary use of incinerators subject to CISWI regulations during disaster recovery, contact Dr. Felica Davis, Sector Policies and Programs Division (E143–03), Office of Air Quality Planning and Standards, U.S. Environmental Protection Agency, 109 T.W. Alexander Drive, P.O. Box 12055, Research Triangle Park, North Carolina, 27711; telephone number: (919) 541–4857 and email address: *davis.felica@epa.gov.*

**SUPPLEMENTARY INFORMATION:**

*Docket.* The EPA has established a docket for this action under Docket ID No. EPA–HQ–OAR–2003–0119. All documents in the docket are listed at *www.regulations.gov.* Although listed, some information is not publicly available, *e.g.,* Confidential Business Information (CBI) or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, is not placed on the internet and will be publicly available only in hard copy. With the exception of such material, publicly available docket materials are available electronically in *www.regulations.gov.*

*Instructions.* Direct your comments to Docket ID No. EPA–HQ–OAR–2003–0119. The EPA's policy is that all comments received will be included in the public docket without change and may be made available online at *www.regulations.gov,* including any personal information provided, unless the comment includes information claimed to be CBI, Proprietary Business Information (PBI), or other information whose disclosure is restricted by statute. Do not submit information that you consider to be CBI, PBI, or otherwise protected through *www.regulations.gov* or email. This type of information should be submitted as discussed below.

The EPA may publish any comment received to its public docket. Multimedia submissions (audio, video, etc.) must be accompanied by a written comment. The written comment is considered the official comment and should include discussion of all points you wish to make. The EPA will generally not consider comments or comment contents located outside of the primary submission (*i.e.,* on the Web, cloud, or other file sharing system). For additional submission methods, the full EPA public comment policy, information about CBI, PBI, or multimedia submissions, and general guidance on making effective comments, please visit *www.epa.gov/dockets/commenting-epa-dockets.*

The *www.regulations.gov* website allows you to submit your comment anonymously, which means the EPA will not know your identity or contact information unless you provide it in the body of your comment. If you send an email comment directly to the EPA

without going through *www.regulations.gov,* your email address will be automatically captured and included as part of the comment that is placed in the public docket and made available on the internet. If you submit an electronic comment, the EPA recommends that you include your name and other contact information in the body of your comment and with any digital storage media you submit. If the EPA cannot read your comment due to technical difficulties and cannot contact you for clarification, the EPA may not be able to consider your comment. Electronic files should not include special characters or any form of encryption and should be free of any defects or viruses. For additional information about the EPA's public docket, visit the EPA Docket Center homepage at *www.epa.gov/dockets.*

*Submitting CBI.* Do not submit information containing CBI to the EPA through *www.regulations.gov* or email. Clearly mark the part or all of the information that you claim to be CBI. For CBI information on any digital storage media that you mail to the EPA, mark the outside of the digital storage media as CBI and then identify electronically within the digital storage media the specific information that is claimed as CBI. In addition to one complete version of the comments that includes information claimed as CBI, you must submit a copy of the comments that does not contain the information claimed as CBI directly to the public docket through the procedures outlined in the *Instructions* section above. If you include other information whose disclosure is restricted by statute in your comment, clearly mark your submission as including that information. If you submit any digital storage media that does not contain CBI, mark the outside of the digital storage media clearly that it does not contain CBI and note the docket ID. Information not marked as CBI will be included in the public docket and the EPA's electronic public docket without prior notice. Information marked as CBI will not be disclosed except in accordance with procedures set forth in 40 Code of Federal Regulations (CFR) part 2. Information whose disclosure is otherwise restricted by statute will be processed by the EPA Docket Center in accordance with the applicable statute.

Our preferred method to receive CBI is for it to be transmitted electronically using email attachments, File Transfer Protocol (FTP), or other online file sharing services (*e.g.,* Dropbox, OneDrive, Google Drive). Electronic submissions must be transmitted directly to the Office of Air Quality Planning and Standards (OAQPS) CBI Office at the email address *oaqps_cbi@epa.gov,* and as described above, should include clear CBI markings and note the docket ID. If assistance is needed with submitting large electronic files that exceed the file size limit for email attachments, and if you do not have your own file sharing service, please email *oaqps_cbi@epa.gov* to request a file transfer link. If sending CBI information through the postal service, please send it to the following address: OAQPS Document Control Officer (C404–02), OAQPS, U.S. Environmental Protection Agency, 109 T.W. Alexander Drive, P.O. Box 12055, Research Triangle Park, North Carolina, 27711, Attention Docket ID No. EPA–HQ–OAR–2003–0119. The mailed CBI material should be double wrapped and clearly marked. Any CBI markings should not show through the outer envelope. Note that written comments containing CBI and submitted by mail may be delayed and no hand deliveries will be accepted.

*Participation in virtual public hearing.* To request a virtual public hearing, contact the public hearing team at (888) 627–7764 or by email at *AQPDpublichearing@epa.gov.* If requested, the public hearing will be held via virtual platform on September 10, 2025. The EPA will announce additional details on the virtual public hearing at *https://www.epa.gov/stationary-sources-air-pollution/commercial-and-industrial-solid-waste-incineration-units-ciswi-new.* The EPA may close a session 15 minutes after the last pre-registered speaker has testified if there are no additional speakers.

If a public hearing is requested, the EPA will begin pre-registering speakers for each hearing no later than 1 business day following publication of this document in the **Federal Register**. The EPA will accept registrations on an individual basis. To register to speak at the virtual hearing, please contact the public hearing team at (888) 627–7764 or email at *AQPDpublichearing@epa.gov.* The last day to pre-register to speak at the public hearing will be September 7, 2025. Prior to the hearing, the EPA will post a general agenda that will list pre-registers speakers at: *https://www.epa.gov/stationary-sources-air-pollution/commercial-and-industrial-solid-waste-incineration-units-ciswi-new.*

The EPA will make every effort to follow the schedule as closely as possible on the day of the hearing; however, please plan for the hearings to run either ahead of schedule or behind schedule.

Each commenter will have 4 minutes to provide oral testimony. The EPA encourages commenters to provide the EPA with a copy of their oral testimony electronically (via email) by emailing it to *AQPDpublichearing@epa.gov.* The EPA also recommends submitting the text of your oral testimony as written comments to the rulemaking docket.

The EPA may ask clarifying questions during the oral presentations but will not respond to the presentations at that time. Written statements and supporting information submitted during the comment period will be considered with the same weight as oral testimony and supporting information presented at the public hearing.

Please note that any updates made to any aspect of the hearing will be posted online at *https://www.epa.gov/stationary-sources-air-pollution/commercial-and-industrial-solid-waste-incineration-units-ciswi-new.* While the EPA expects the hearing to be conducted as set forth earlier, please monitor our website or contact the public hearing team at (888) 627–7764 or by email at *AQPDpublichearing@epa.gov* to determine if there are any updates. The EPA does not intend to publish a document in the **Federal Register** announcing updates. If you require the services of a translator or special accommodation such as audio description, please pre-register for the hearing with the public hearing team and describe your needs by September 2, 2025. The EPA may not be able to arrange accommodations without advanced notice.

*Children's Environmental Health.* Since we cannot predict when or how many units will need to use the temporary-use exemption or what debris will need to be burned after a disaster, we were unable to do an analysis to determine impacts on children's health.

*Preamble acronyms and abbreviations.* Throughout this preamble the use of ''we,'' ''us,'' or ''our'' is intended to refer to the EPA. We use multiple acronyms and terms in this preamble. While this list may not be exhaustive, to ease the reading of this preamble and for reference purposes, the EPA defines the following terms and acronyms here:

ACI Air Curtain Incinerator
CAA Clean Air Act
CBI Confidential Business Information
CFR Code of Federal Regulations
CISWI Commercial and Industrial Solid Waste Incinerator
EG Emissions Guidelines
EPA Environmental Protection Agency
FR Federal Register
ICR Information Collection Request
NSPS New Source Performance Standards

OMB Office of Management and Budget
OSWI Other Solid Waste Incinerator
PBI Proprietary Business Information
PRA Paperwork Reduction Act
RFA Regulatory Flexibility Act
TPD Tons Per Day
UMRA Unfunded Mandates Reform Act

*Organization of this document.* The information in this preamble is organized as follows:

I. General Information
A. Does this action apply to me?
B. Where can I get a copy of this document and other related information?
C. Judicial Review
II. Background
A. What is the Agency's statutory authority for taking this action?
B. What is the regulatory history for this action?
C. What action is the EPA taking?
III. What are the actions and rationale for this rulemaking?
A. Temporary Use of CISWI During Disaster Recovery
B. Temporary-Use Period and Notifications
IV. Rulemaking Procedures
V. Summary of Cost, Environmental, and Economic Impacts
VI. Request for Comment
VII. Statutory and Executive Order Reviews
A. Executive Order 12866: Regulatory Planning and Review and Executive Order 13563: Improving Regulation and Regulatory Review
B. Paperwork Reduction Act (PRA)
C. Regulatory Flexibility Act (RFA)
D. Unfunded Mandates Reform Act (UMRA)
E. Executive Order 13132: Federalism
F. Executive Order 13175: Consultation and Coordination With Indian Tribal Governments
G. Executive Order 13045: Protection of Children From Environmental Health Risks and Safety Risks
H. Executive Order 13211: Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use
I. Executive Order 14192: Unleashing Prosperity Through Deregulation
K. National Technology Transfer and Advancement Act (NTTAA)
J. Congressional Review Act

## I. General Information

### *A. Does this action apply to me?*

Categories and entities potentially affected by this rulemaking are those that operate incinerators (including ACI) subject to CISWI New Source Performance Standards (NSPS) (40 CFR part 60, subpart CCCC), Federal Plan (40 CFR part 62, subpart IIIa), or Emissions Guidelines (EG) (40 CFR part 60, subpart DDDD) (hereinafter collectively referred to as ''CISWI''). If you have questions regarding the applicability of this action to a particular entity, consult the person listed in the **FOR FURTHER INFORMATION CONTACT** section.

### *B. Where can I get a copy of this document and other related information?*

The EPA has established a docket for this action under Docket ID No. EPA–HQ–OAR–2003–0119. Following signature by the EPA Administrator, the EPA also will post a copy of this document to *https://www.epa.gov/stationary-sources-air-pollution/commercial-and-industrial-solid-waste-incineration-units-ciswi-new.*

### *C. Judicial Review*

Under CAA section 307(b)(1), judicial review of this final action is available only by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit by October 27, 2025. Under CAA section 307(b)(2), the requirements established by this final rule may not be challenged separately in any civil or criminal proceedings brought by the EPA to enforce the requirements.

## II. Background

### *A. What is the Agency's statutory authority for this action?*

CAA section 129, entitled ''Solid Waste Combustion,'' requires the EPA to develop and adopt NSPS and EG for solid waste incineration units pursuant to CAA section 111.[1] Section 111(b) of the CAA requires the EPA to establish NSPS for new sources, and CAA section 111(d) requires the EPA to establish procedures for States to submit plans for implementing EG for existing sources. The EPA promulgates Federal implementation plans to regulate existing sources where there are no approved State plans.

CAA section 129(a)(1) identifies five categories of solid waste incineration units and requires emissions standards for each category. The five categories of solid waste incineration units are:

(1) Units with a capacity of greater than 250 tons per day (TPD) combusting municipal waste;

(2) Units with a capacity equal to or less than 250 TPD combusting municipal waste;

(3) Units combusting hospital, medical, and infectious waste;

(4) Units combusting commercial or industrial waste; and

(5) Unspecified ''other categories of solid waste incineration units.'' (commonly referred to as ''OSWI'').

While the CAA specifically describes four of the five listed categories by the types of wastes burned, it leaves unspecified the ''other categories of solid waste incineration units.'' As the EPA observed during the development of standards for OSWI, Congress could have unambiguously required OSWI to cover every other possible type of incineration unit burning any type of solid waste but did not to do so, thereby leaving the EPA discretion to delineate those ''other'' categories of solid waste incineration units. 70 FR 74870, 74875 (December 16, 2005). Based on that authority, the EPA defined OSWI to include very small municipal combustion units and institutional waste combustion incineration units. The EPA analyzed and excluded various types of incinerators from being subject to CAA section 129 standards; among those excluded are incinerators when used on a temporary basis to combust debris during disaster recovery. The EPA determined that some incinerators ''should be handled differently due to unusual circumstances (*e.g.,* unique geographic locations or climatic factors, temporary emergency use)'' that would render compliance with CAA section 129 rules infeasible. *Id.* at 74875. With respect to incinerators for temporary emergency use, the EPA observed that ''[i]n emergency situations, quick removal of debris is of utmost importance to maintain public health and safety. Depending on the type of emergency and the local situation, there may be no reasonable and safe alternatives to incineration.'' *Id.* At 74880.

The EPA also observed that some control devices, such as a wet scrubber, may not operate as required under CAA section 129 during the disaster recovery period because ''the water supply, handling and treatment capabilities required to operate a wet scrubber may be unavailable for long periods of time in the disaster areas, while the need for recovery is immediate,'' rendering it infeasible to comply with CAA section 129 rules during emergency temporary use when the standards in questions were based on the use of control technologies like wet scrubbers. *Id.* at 74880. In addition, ''regulation would hinder the recovery effort, and this impact would outweigh the benefits from regulation of the units.'' *Id.* at 74879. Accordingly, the EPA exercised its discretion under CAA section 129(a)(1)(5) to define the scope of OSWI to exclude incinerators from being subject to CAA section 129 standards and associated requirements when they are used to combust debris during disaster recovery. To qualify for this exclusion, an incinerator ''must be used to combust debris in an area declared a State of Emergency by a local or State

[1] CAA section 129(a)(1)(A), 42 U.S.C. 7429(a)(1)(A).

government, or the President, under the authority of the Stafford Act, has declared that an emergency or a major disaster exists in the area.'' 40 CFR 60.2969 (OSWI NSPS); *see also* 40 CFR 60.3061 (OSWI EG). In addition, owners and operators must follow the notification requirements in the temporary-use provisions. *Id.*

Because these temporary-use provisions are codified in the Federal OSWI regulations, they are currently limited to incinerators subject to the Federal OSWI regulations. The EPA has realized that States need more incinerators for emergency/disaster debris cleanup, and some have requested the temporary use of CISWI for such purpose. Therefore, based on the same authority and for the same reasons explained in the 2005 OSWI rule [2] and here in section II.B. of this preamble, the EPA is including similar temporary-use provisions for disaster recovery in CISWI regulations, thereby extending such temporary use to incinerators at commercial and industrial facilities.

CAA section 129(a)(1)(C) requires that the EPA establish standards for ''solid waste incineration units combusting commercial and industrial wastes.'' However, this action provides for the temporary use of CISWI during disaster recovery to burn debris (which is defined in the Webster Dictionary as remains of materials broken or destroyed, in this case by a natural disaster or emergency); the temporary-use provisions do not apply to combustion of commercial and industrial wastes (*i.e.,* wastes generated by commercial and industrial facilities) for which standards are required under CAA section 129(a)(1)(C). The EPA, therefore, concludes that incinerators at commercial and industrial facilities need not comply with CAA section 129 emission standards and associated requirements for CISWI while they are used on a temporary basis to combust non-hazardous, disaster related debris, not waste from their normal operations.

Please note that while the EPA is amending the CISWI EG (40 CFR part 60, subpart DDDD), along with the CISWI NSPS and Federal plan, to include the temporary-use provisions, the CISWI EG does not directly apply to existing CSIWI covered by that EG. However, States may revise their State plans implementing 40 CFR part 60, subpart DDDD to add the temporary-use provisions that are now in 40 CFR part 60, subpart DDDD, thereby allowing their existing CISWI to be used temporarily for emergency/disaster debris cleanup without complying with their CAA section 129 standards during that period.

*B. What is the regulatory history for this action?*

In 2005, the EPA promulgated the OSWI NSPS (40 CFR part 60, subpart EEEE) and EG (40 CFR part 60, subpart FFFF). 70 FR 74870 (December 16, 2005). Those regulations established CAA section 129 standards and associated requirements for OSWI and also allow temporary use of incinerators to burn debris during disaster recovery without complying with such standards as would apply under ordinary circumstances. Because these OSWI regulations are currently the only CAA section 129 regulations with such temporary-use provisions, only incinerators subject to OSWI NSPS or State plans implementing OSWI EG may be used on a temporary basis to combust debris from a disaster or emergency without complying with CAA section 129 requirements during that period.

On January 24, 2025, President Trump issued Executive Order (E.O.) 14181, ''Emergency Measures to Provide Water Resources in California and Improve Disaster Response in Certain Areas'' to expedite cleanup of the catastrophic wildfires in Los Angeles County.[3] Executive Order 14181 sparked renewed awareness of regulatory challenges associated with disaster recovery. When Hurricane Helene seriously impacted many States on the Eastern seaboard in September 2024, the EPA could not grant North Carolina's request to use CISWI to combust disaster-related non-hazardous debris without complying with CAA section 129 standards because the CISWI regulations did not have temporary-use provisions like those in the OSWI regulations.

*C. What action is the EPA taking?*

As incinerators are useful for disaster/emergency cleanup and recovery efforts that directly implicate and benefit human health and the environment, the EPA does not want to hinder the temporary use of incinerators during these types of events. To respond to this need, in this rule, the EPA is including in the CISWI regulations temporary-use provisions similar to those in the Federal OSWI regulations. As amended, the EPA's regulations will now provide that CISWI used on a temporary basis to combust debris from a disaster or emergency such as a tornado, hurricane, flood, ice storm, high winds, or act of bioterrorism need not comply with otherwise applicable CAA section 129 requirements when used for such purposes and the requirements of the regulation for such use are satisfied. Such temporary-use provisions are provided in the following CAA section 129 regulations:

- 40 CFR part 60, subpart CCCC—Standards of Performance for Commercial and Industrial Solid Waste Incineration Units
- 40 CFR part 60, subpart DDDD—Emission Guidelines and Compliance Times for Commercial and Industrial Solid Waste Incineration Units
- 40 CFR part 62, subpart IIIa—Federal Plan Requirements for Commercial and Industrial Solid Waste Incineration Units That Commenced Construction On or Before June 4, 2010, and Have Not Been Modified or Reconstructed Since August 7, 2013

As discussed in section II.A of this preamble, the temporary-use provisions in 40 CFR part 60, subpart DDDD do not directly apply to existing sources. However, States may amend their State plans implementing 40 CFR part 60, subpart DDDD to include these temporary-use provisions.

**III. What are the actions and rationale for this rulemaking?**

*A. Temporary Use of CISWI During Disaster Recovery*

The EPA is amending CISWI regulations to establish temporary-use disaster recovery and emergency provisions similar to those in the Federal OSWI regulations. Accordingly, like OSWI units, CISWI units used to combust debris during qualifying disaster events will no longer be bound by the CAA section 129 emission standards that apply during ordinary circumstances as long as they meet the conditions for these temporary-use provisions. Specifically, CISWI units may only be used to combust debris in an area that has been declared as a State of Emergency by a local or state government or where the President, under the authority of the Stafford Act, has declared that an emergency or a major disaster exists in the area. Under these temporary-use provisions, debris that is combusted is any non-hazardous material that must be the remains of something that was destroyed, broken, or discarded as a result of a disaster or emergency such as a tornado, hurricane, flood, ice storm, high winds, or act of bioterrorism. During the disaster recovery period, the CISWI cannot burn waste from normal operations at their facilities. As explained further below, owners and or operators must follow the

[2] 70 FR 74875 and 74879 (December 16, 2005).

[3] Executive Order 14181, Emergency Measures to Provide Water Resources in California and Improve Disaster Response in Certain Areas, 90 FR 8747 (January 24, 2025).

notification requirements specified in the temporary-use provisions.

In addition, under the CISWI temporary-use provisions, control devices installed to comply with CISWI NSPS, the CISWI Federal plan, or a State plan implementing CISWI EG would continue operation during temporary-use status unless it is not technically feasible to do so due to conditions in the disaster recovery area.[4] Examples of infeasibility to operate include insufficient electricity to operate a control device, lack of water to operate a wet scrubber or quench, and inability to get replacement supplies such as activated carbon or parts for maintenance because of the impacts of the disaster at issue.

We believe that during the disaster recovery period, regulatory requirements for CISWI that apply during ordinary circumstances are not appropriate for incinerators that are burning only non-hazardous debris and only long enough to complete the recovery tasks; these incinerators are not used as long-term waste disposal devices that CAA section 129 standards are designed to regulate. Also, as the EPA previously explained, ''in emergency situations, quick removal of debris is of utmost importance to maintain public health and safety, and temporary-use incinerators may be best suited to dispose of debris.'' 70 FR 74879 (December 16, 2005) The EPA, therefore, elected not to require OSWI compliance with the CAA section 129 standards that apply under ordinary circumstances when they are used on a short-term basis to burn debris during disaster recovery, noting that such ''regulation would hinder the recovery effort, and this impact would outweigh the benefits from regulation of the units.'' *Id.* The EPA found that:

''this proactive approach, which addresses the terms for use of a temporary-use incinerator during declared emergencies or disasters, is better than an approach that requires the EPA and others to react during or immediately after such an emergency or disaster strikes. We also point out that States and the Federal Government have specific procedures that are followed in declaring an area a State of Emergency or a major disaster area. Their procedures involve extensive involvement by local, State, and Federal officials to conduct a preliminary damage assessment, develop debris removal plans, and coordinate and manage disaster assistance activities.'' *Id.*

While owners or operators do not have to meet the emission limitations or other requirements applicable to the CISWI during this period as long as they follow the temporary-use provisions, failure to do so would mean that the temporary use is improperly invoked; in that event, the incinerator remains subject to the CISWI regulations that would normally apply, and the incinerator could be found to be in violation if it is not in compliance.

### *B. Temporary-Use Period and Notifications*

Similar to the OSWI regulations, the EPA is not requiring notification of temporary use of CISWI for disaster recovery that lasts 8 consecutive weeks or less (beginning on the date the unit starts operation in response to a disaster or emergency). If the incinerator will be used for longer than 8 weeks, the owner or operator must notify the Administrator and request permission to continue to operate. The notification must be submitted in writing by the date 8 weeks after the temporary-use incinerator starts operation and must include the date the incinerator started operation within the boundaries of the current emergency or disaster declaration area, identification of the disaster or emergency for which the incinerator is being used, a description of the types of materials being burned in the incinerator, a brief description of the size and design of the unit, including any existing control devices, the reasons the incinerator must be operated for more than eight weeks, the amount of time for which the owner or operator requests permission to operate, including the date the unit is expected to cease operation, and, if applicable, a brief description of why the control devices are infeasible to operate due to the disaster.

After notifying the Administrator in accordance with the above, the owner or operator may extend operation for an additional 8 weeks for a total of 16 weeks from the date the unit started operation. Owners or operators do not have to meet the emission limitations or other requirements applicable to the CISWI during this period. This and the ability to start temporary use without notification during the first 8 weeks are aimed to ease the burden during or immediately after a disaster or emergency.

If the request is for a period beyond another 8 weeks, at the end of 16 weeks from the date the CISWI started operation within the boundaries of the current emergency or disaster declaration area, the owner or operator must cease operation of the unit or comply with all requirements, unless the Administrator has approved in writing your request to continue operation for the requested period.

Upon the effective date of this rule, the temporary-use provisions are effective immediately for incinerators subject to CISWI NSPS (40 CFR part 60, subpart CCCC) and the Federal plan (40 CFR part 62, subpart IIIa). The EPA is adding the same temporary-use provisions in the CISWI EG, 40 CFR part 60, subpart DDDD, which would allow States to amend their State plans for existing CISWI to incorporate this temporary-use provision.

## IV. Rulemaking Procedures

The EPA's authority for the rulemaking procedures followed in this action is provided by Administrative Procedure Act (APA) section 553(b)(B), 5 U.S.C. 553(b)(B), which allows an agency to forego prior notice and comment ''when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefore in the rule issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.'' [5] This action is being issued without prior notice or opportunity for public comment because the EPA finds that prior notice and comment would be impracticable, unnecessary, and contrary to the public interest under the circumstances.

As discussed in section II of this preamble, this interim final rule amends the EPA's CISWI regulations to include temporary use provisions for incinerators during disaster recovery that are essentially the same as those in the existing OSWI regulations.

Prior notice and comment on the temporary-use provisions would be impracticable given the demonstrated need for enhanced disaster recover capacity. Recent disaster events have demonstrated that more incinerators are needed in disaster recovery efforts. Because hurricane, flood, and wildfire

[4] In promulgating the temporary use provisions in the OSWI rules, the EPA recognized that there may be instances where it is not technically feasible to operate a control device through the entire duration of a disaster recovery period. (70 FR 74880; December 16, 2005). Likewise, in this rule, the EPA is requiring that existing controls continue to operate during the temporary use period if technically feasible, thereby acknowledging potential operational issues during such period but minimizing emissions where there are not such issues.

[5] Although the procedural requirements of CAA section 307(d) apply to the EPA's promulgation or revision of any standard or requirement under CAA section 129, these procedural requirements do not apply ''in the case of any rule or circumstance referred to in subparagraphs (A) or (B) of [APA section 553(b)].'' CAA section 307(d)(1), 42 U.S.C. 7607(d)(1).

seasons are all underway, with new events continuously creating a critical demand for this authority, the EPA must take immediate action to put in place these temporary-use provisions to ensure that more incinerators are available for recovery efforts during and following emergencies and major disasters. Prior notice and comment would be impracticable given the purpose of this rulemaking to address pressing need, as standard procedures would result in delaying final action until the conclusion of many of this year's disaster seasons.

Prior notice and comment would be unnecessary because these changes are essentially the same temporary-use provisions as the long-standing OSWI temporary-use provisions that have been implemented in various disaster recovery efforts, including those in North Carolina following Hurricane Helene in September 2024. The OSWI temporary-use provisions underwent notice and comment, which the EPA considered before finalizing. It is, therefore, unnecessary to provide a new round of notice and comment on essentially the same provisions.

In addition to adopting the OSWI temporary-use provisions, the temporary-use provisions for CISWI include a condition that existing controls remain operating during the temporary-use period unless operation is infeasible due to the disaster. This condition minimizes emissions during disaster recovery and creates no additional burden on the CISWI owners and operators as the controls are already in place and operating. We, therefore, do not consider that the addition of this condition warrants a new round of notice and comment.

For much the same reasons, the EPA finds that prior notice and comment would be contrary to the public interest under the circumstances. As explained further below with respect to the effective date for this action, the public interest is furthered by an immediate availability of the allowances already afforded to OSWI units to CISWI units because of the pressing need for rapid and effective disaster relief where such circumstances are present. The EPA has successfully administered the same allowances for OSWI units for decades without experiencing significant drawbacks and is committed to reviewing and responding to public comments and revising this action if appropriate.

This rule is effective immediately upon publication. Section 553(d) of the APA requires publication of the final rule to precede the effective date by at least 30 days unless, as relevant here, the Agency finds good cause to make the rule effective immediately upon publication under APA section 553(d)(3).[6] For the reasons explained below, the Agency finds that there is good cause to make this rule effective immediately upon publication.

The public has a strong interest to have this rule take effect as quickly as possible considering recent flooding in Texas, New Mexico, and North Carolina, and the fact that hurricane season and the peak of wildfire season are underway. The regulated community needs little, if any, time to prepare for this rule, which adds no new burden to the owners and operators of the incinerators during the temporary-use period. The only requirement is to send a notice to the EPA if the units are to be used longer than 8 weeks. This routine notification requirement requires minimal resources and would not come into play for any unit until well after the default 30 day delayed effectiveness period. For the reasons provided above, the Agency finds that there is good cause to make this rule effective immediately upon publication. APA section 553(d)(1) also justifies making the action effective immediately as it ''grants or recognizes an exemption or relieves a restriction.'' The temporary-use provisions relieve a restriction because they provide relaxed requirements for when CISWI units are used temporarily to combust debris in an area declared a State of Emergency that meets the requirements set out in this action.

## V. Summary of Cost, Environmental, and Economic Impacts

This rule will allow for the temporary use of CISWI during a qualifying disaster. Facilities with CISWI that use the disaster recovery temporary-use provisions are not subject to additional control requirements; in fact, they do not need to meet the CAA section 129 requirements during this temporary-use period. Therefore, we anticipate there will not be any additional compliance costs. As cleanup responses are required during and following a disaster or emergency, we anticipate this action to add zero or de minimis environmental impacts due to this action supplanting alternative combustion options.

[6] See *Omnipoint Corp.* v. *FCC,* 78 F.3d 620, 630 (D.C. Cir. 1996) (in determining whether good cause exists to make a rule immediately effective, an agency should ''balance the necessity for immediate implementation against principles of fundamental fairness which require that all affected persons be afforded a reasonable amount of time to prepare for the effective date of its ruling'').

## VI. Request for Comment

As explained in section IV of this preamble, the EPA finds good cause to issue this interim final rule without prior notice or opportunity for public comment. However, the EPA is providing an opportunity for the public to comment on the temporary-use provisions established in this final rule and requests comment on the provisions described herein. The EPA will review comments received and consider whether the provisions should be revised, if appropriate, in response to comments received.

## VII. Statutory and Executive Order Reviews

Additional information about these statutes and Executive Orders can be found at *www.epa.gov/laws-regulations/laws-and-executive-orders.*

### *A. Executive Order 12866: Regulatory Planning and Review and Executive Order 13563: Improving Regulation and Regulatory Review*

This action is not a significant regulatory action and was, therefore, not submitted to the Office of Management and Budget (OMB) for review.

### *B. Executive Order 14192: Unleashing Prosperity Through Deregulation*

This action is considered an Executive Order 14192 deregulatory action. This final rule provides burden reduction during emergency and disaster recovery with the temporary-use provisions for CISWI.

### *C. Paperwork Reduction Act (PRA)*

The information collection activities in this rule have been submitted for approval to OMB under the PRA. The information collection request (ICR) documents that the EPA prepared have been assigned EPA ICR number 7811.01 (subpart CCCC) and number 7812.01 (subpart DDDD). You can find a copy of the ICRs in the docket for this rule, and it is briefly summarized here. The information collection requirements are not enforceable until OMB approves them.

This action amends the current requirements in 40 CFR part 60 subparts CCCC and DDDD and 40 CFR part 62 subpart IIIa to allow owners and operators to temporarily combust debris associated with disaster recovery. As part of these new requirements, owners and operators must submit a notification to the Administrator whenever an incinerator is used to combust this type of debris for more than 8 weeks. There are no other changes to the notification, recordkeeping, and reporting requirements in these subparts. These

notifications, reports, and records are essential in determining compliance with the applicable subpart.

*Respondents/affected entities:* Owners and operators of new and existing CISWI units.

*Respondent's obligation to respond:* Mandatory if temporary use exceeds 8 weeks (40 CFR part 60, subpart CCCC, 40 CFR part 60, subpart DDDD, and 40 CFR part 62, subpart IIIa).

*Estimated number of respondents:* 92 (16 for 40 CFR part 60, subpart CCCC and 76 for 40 CFR part 60, subpart DDDD and 40 CFR part 62, subpart IIIa), of which the EPA estimates that approximately 4.3 (1.6 and 2.7 for new and existing units, respectively) will be subject to this new notification requirement annually.

*Frequency of response:* As needed for disaster recovery.

*Total estimated burden:* 2,230 hours per year for 40 CFR part 60, subpart CCCC and 8,660 hours per year for 40 CFR part 60, subpart DDDD and 40 CFR part 62, subpart IIIa, of which the EPA estimates approximately 3.7 and 6.2 burden hours, respectively, are associated with this notification annually. Burden is defined at 5 CFR 1320.3(b).

*Total estimated cost:* $1,530,000 (per year) for 40 CFR part 60, subpart CCCC and 13,500,000 (per year) for 40 CFR part 60, subpart DDDD and 40 CFR part 62, subpart IIIa, of which the EPA estimates that approximately $529 and $893, respectively, are associated with this notification annually.

An agency may not conduct or sponsor, and a person is not required to respond to, an ICR unless it displays a currently valid OMB control number. The OMB control numbers for the EPA's regulations in 40 CFR are listed in 40 CFR part 9. When OMB approves this ICR, the Agency will announce that approval in the **Federal Register** and publish a technical amendment to 40 CFR part 9 to display the OMB control number for the approved information collection activities contained in this final rule.

*D. Regulatory Flexibility Act (RFA)*

This action is not subject to the RFA. The RFA applies only to rules subject to notice and comment rulemaking requirements under the APA, 5 U.S.C. 553, or any other statute. This rule is not subject to notice-and-comment requirements because the Agency has invoked the APA ''good cause'' exemption under 5 U.S.C. 553(b).

*E. Unfunded Mandates Reform Act (UMRA)*

This action does not contain an unfunded mandate of $100 million or more (in 1995 dollars) as described in the UMRA, 2 U.S.C. 1531–1538, and does not significantly or uniquely affect small governments. This action imposes no enforceable duty on any state, local or Tribal governments or the private sector.

*F. Executive Order 13132: Federalism*

This action does not have federalism implications. It will not have substantial direct effects on the States, on the relationship between the national government and the States, or on the distribution of power and responsibilities among the various levels of government.

*G. Executive Order 13175: Consultation and Coordination With Indian Tribal Governments*

This action does not have Tribal implications. It will neither impose substantial direct compliance costs on Federally recognized Tribal governments, nor preempt Tribal law. Thus, Executive Order 13175 does not apply to this action.

*H. Executive Order 13045: Protection of Children From Environmental Health Risks and Safety Risks*

Executive Order 13045 directs Federal agencies to include an evaluation of the health and safety effects of the planned regulation on children and explain why the regulation is preferable to potentially effective and reasonably feasible alternatives. This action is not subject to Executive Order 13045 because it is not a significant regulatory action under section 3(f)(1) of Executive Order 12866 and because the EPA does not believe the environmental health or safety risks addressed by this action present a disproportionate risk to children. Emissions changes are projected to be zero or de minimis, and therefore effects on children's health would also be zero or de minimis.

However, EPA's *Policy on Children's Health* applies to this action. Information on how the Policy was applied is available under ''Children's Environmental Health'' in the Supplementary Information section of this preamble.

*I. Executive Order 13211: Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use*

This action is not subject to Executive Order 13211, because it is not a significant regulatory action under Executive Order 12866.

*J. National Technology Transfer and Advancement Act (NTTAA)*

This rulemaking does not involve technical standards.

*K. Congressional Review Act*

This action is subject to the Congressional Review Act (CRA), and the EPA will submit a rule report to each House of the Congress and to the Comptroller General of the United States. This action is not a ''major rule'' as defined by 5 U.S.C. 804(2).

**List of Subjects**

*40 CFR Parts 60 and 62*

Environmental protection, Administrative practice and procedures, Air pollution control, Reporting and recordkeeping requirements.

**Lee Zeldin,**

*Administrator.*

For the reasons stated in the preamble, the Environmental Protection Agency amends 40 CFR parts 60 and 62 as follows:

## PART 60—STANDARDS OF PERFORMANCE FOR NEW STATIONARY SOURCES

■ 1. The authority citation for part 60 continues to read as follows:

**Authority:** 42 U.S.C. 7401 *et seq.*

## Subpart CCCC—Standards of Performance for Commercial and Industrial Solid Waste Incineration Units

■ 2. Under the undesignated center heading ''Applicability'' add § 60.2041 to read as follows:

### § 60.2041 What are the requirements for temporary-use incinerators and air curtain incinerators used in disaster recovery?

(a) If your CISWI or air curtain incinerator is used on a temporary basis to combust debris from a disaster or emergency such as a tornado, hurricane, flood, ice storm, high winds, or act of bioterrorism, it is excluded from the requirements of this subpart during the temporary-use period permitted under paragraphs (b) through (d) of this section as long as your CISWI or air curtain incinerator is used in accordance with paragraph (a) of this section. To qualify for this exclusion, the CISWI or air curtain incinerator may only be used to combust debris in an area declared a State of Emergency by a local or state government, or the President, under the authority of the

Stafford Act, has declared that an emergency or a major disaster exists in the area. If your CISWI or air curtain incinerator is equipped with a control device, you must continue to run that control device in order to qualify for this exclusion, unless the control device is infeasible to operate as a result of the disaster Additionally, you must follow the requirements specified in paragraphs (b) through (d) of this section.

(b) If the CISWI or air curtain incinerator is used in accordance with paragraph (a) of this section during a period that begins on the date the unit started operation and lasts 8 weeks or less within the boundaries of the same emergency or disaster declaration area, then it is excluded from the requirements of this subpart. You do not need to notify the Administrator of its use or meet the emission limitations or other requirements of this subpart.

(c) If the CISWI or air curtain incinerator will be used during a period that begins on the date the unit started operation and lasts more than 8 weeks within the boundaries of the same emergency or disaster declaration area, you must notify the Administrator that the temporary-use CISWI or air curtain incinerator will be used for more than 8 weeks and request permission to continue to operate the unit as specified in paragraphs (c)(1) and (2) of this section.

(1) The notification must be submitted in writing by the date 8 weeks after you start operation of the temporary-use CISWI or air curtain incinerator within the boundaries of the current emergency or disaster declaration area.

(2) The notification must contain the date the CISWI or air curtain incinerator started operation within the boundaries of the current emergency or disaster declaration area, identification of the disaster or emergency for which the CISWI or air curtain incinerator is being used, a description of the types of materials being burned in the CISWI or air curtain incinerator, a brief description of the size and design of the unit (for example, an air curtain incinerator or a modular starved-air incinerator), the reasons the CISWI or air curtain incinerator must be operated for more than 8 weeks, and the amount of time for which you request permission to operate including the date you expect to cease operation of the unit.

(d) If you submitted the notification containing the information in paragraph (c)(2) of this section, by the date specified in paragraph (c)(1) of this section, you may continue to operate the CISWI or air curtain incinerator for another 8 weeks, which is a total of 16 weeks from the date the unit started operation within the boundaries of the current emergency or disaster declaration area, so long as control devices continue to run as able. You do not have to meet the emission limitations or other requirements of this subpart during this period.

(1) At the end of 16 weeks from the date the CISWI or air curtain incinerator started operation within the boundaries of the current emergency or disaster declaration area, you must cease operation of the unit or comply with all requirements of this subpart, unless the Administrator has approved in writing your request to continue operation.

(2) If the Administrator has approved in writing your request to continue operation, then you may continue to operate the CISWI or air curtain incinerator within the boundaries of the current emergency or disaster declaration area until the date specified in the approval, and you do not need to comply with any other requirements of this subpart during the approved time period.

## Subpart DDDD—Emissions Guidelines and Compliance Times for Commercial and Industrial Solid Waste Incineration Units

■ 3. Under the undesignated center heading ''Applicability of State Plans'' add § 60.2556 to read as follows:

**§ 60.2556 What are the requirements for temporary-use incinerators and air curtain incinerators used in disaster recovery?**

(a) If your CISWI or air curtain incinerator is used on a temporary basis to combust debris from a disaster or emergency such as a tornado, hurricane, flood, ice storm, high winds, or act of bioterrorism, it is excluded from the requirements of this subpart during the temporary-use period permitted under paragraphs (b) through (d) of this section as long as your CISWI or air curtain incinerator is used in accordance with paragraph (a) of this section. To qualify for this exclusion, the CISWI or air curtain incinerator may only be used to combust debris in an area declared a State of Emergency by a local or state government, or the President, under the authority of the Stafford Act, has declared that an emergency or a major disaster exists in the area. If your CISWI or air curtain incinerator is equipped with a control device, you must continue to run that control device in order to qualify for this exclusion, unless the control device is infeasible to operate as a result of the disaster. Additionally, you must follow the requirements specified in paragraphs (b) through (d) of this section.

(b) If the CISWI or air curtain incinerator is used in accordance with paragraph (a) of this section during a period that begins on the date the unit started operation and lasts 8 weeks or less within the boundaries of the same emergency or disaster declaration area, then it is excluded from the requirements of this subpart. You do not need to notify the Administrator of its use or meet the emission limitations or other requirements of this subpart.

(c) If the CISWI or air curtain incinerator will be used during a period that begins on the date the unit started operation and lasts more than 8 weeks within the boundaries of the same emergency or disaster declaration area, you must notify the Administrator that the temporary-use CISWI or air curtain incinerator will be used for more than 8 weeks and request permission to continue to operate the unit as specified in paragraphs (c)(1) and (2) of this section.

(1) The notification must be submitted in writing by the date 8 weeks after you start operation of the temporary-use CISWI or air curtain incinerator within the boundaries of the current emergency or disaster declaration area.

(2) The notification must contain the date the CISWI or air curtain incinerator started operation within the boundaries of the current emergency or disaster declaration area, identification of the disaster or emergency for which the CISWI or air curtain incinerator is being used, a description of the types of materials being burned in the CISWI or air curtain incinerator, a brief description of the size and design of the unit (for example, an air curtain incinerator or a modular starved-air incinerator), the reasons the CISWI or air curtain incinerator must be operated for more than 8 weeks, and the amount of time for which you request permission to operate including the date you expect to cease operation of the unit.

(d) If you submitted the notification containing the information in paragraph (c)(2) of this section, by the date specified in paragraph (c)(1) of this section, you may continue to operate the CISWI or air curtain incinerator for another 8 weeks, which is a total of 16 weeks from the date the unit started operation within the boundaries of the current emergency or disaster declaration area, so long as control devices continue to run as able. You do not have to meet the emission limitations or other requirements of this subpart during this period.

(1) At the end of 16 weeks from the date the CISWI or air curtain incinerator started operation within the boundaries of the current emergency or disaster declaration area, you must cease operation of the unit or comply with all requirements of this subpart, unless the Administrator has approved in writing your request to continue operation.

(2) If the Administrator has approved in writing your request to continue operation, then you may continue to operate the CISWI or air curtain incinerator within the boundaries of the current emergency or disaster declaration area until the date specified in the approval, and you do not need to comply with any other requirements of this subpart during the approved time period.

## PART 62—APPROVAL AND PROMULGATION OF STATE PLANS FOR DESIGNATED FACILITIES AND POLLUTANTS

■ 4. The authority citation for part 62 continues to read as follows:

**Authority:** 42 U.S.C. 7401 *et seq.*

## Subpart IIIa—Federal Plan Requirements for Commercial and Industrial Solid Waste Incineration Units That Commenced Construction on or Before June 4, 2010, and Have Not Been Modified or Reconstructed Since August 7, 2013

■ 5. Under the undesignated center heading ''Applicability'' add § 62.14531a to read as follows:

**§ 62.14531a What are the requirements for temporary-use incinerators and air curtain incinerators used in disaster recovery?**

(a) If your CISWI or air curtain incinerator is used on a temporary basis to combust debris from a disaster or emergency such as a tornado, hurricane, flood, ice storm, high winds, or act of bioterrorism, it is excluded from the requirements of this subpart during the temporary-use period permitted under paragraphs (b) through (d) of this section as long as your CISWI or air curtain incinerator is used in accordance with paragraph (a) of this section. To qualify for this exclusion, the CISWI or air curtain incinerator may only be used to combust debris in an area declared a State of Emergency by a local or state government, or the President, under the authority of the Stafford Act, has declared that an emergency or a major disaster exists in the area. If your CISWI or air curtain incinerator is equipped with a control device, you must continue to run that control device in order to qualify for this exclusion, unless the control device is infeasible to operate as a result of the disaster. Additionally, you must follow the requirements specified in paragraphs (b) through (d) of this section.

(b) If the CISWI or air curtain incinerator is used in accordance with paragraph (a) of this section during a period that begins on the date the unit started operation and lasts 8 weeks or less within the boundaries of the same emergency or disaster declaration area, then it is excluded from the requirements of this subpart. You do not need to notify the Administrator of its use or meet the emission limitations or other requirements of this subpart.

(c) If the CISWI or air curtain incinerator will be used during a period that begins on the date the unit started operation and lasts more than 8 weeks within the boundaries of the same emergency or disaster declaration area, you must notify the Administrator that the temporary-use CISWI or air curtain incinerator will be used for more than 8 weeks and request permission to continue to operate the unit as specified in paragraphs (c)(1) and (2) of this section.

(1) The notification must be submitted in writing by the date 8 weeks after you start operation of the temporary-use CISWI or air curtain incinerator within the boundaries of the current emergency or disaster declaration area.

(2) The notification must contain the date the CISWI or air curtain incinerator started operation within the boundaries of the current emergency or disaster declaration area, identification of the disaster or emergency for which the CISWI or air curtain incinerator is being used, a description of the types of materials being burned in the CISWI or air curtain incinerator, a brief description of the size and design of the unit (for example, an air curtain incinerator or a modular starved-air incinerator), the reasons the CISWI or air curtain incinerator must be operated for more than 8 weeks, and the amount of time for which you request permission to operate including the date you expect to cease operation of the unit.

(d) If you submitted the notification containing the information in paragraph (c)(2) of this section, by the date specified in paragraph (c)(1) of this section, you may continue to operate the CISWI or air curtain incinerator for another 8 weeks, which is a total of 16 weeks from the date the unit started operation within the boundaries of the current emergency or disaster declaration area, so long as control devices continue to run as able. You do not have to meet the emission limitations or other requirements of this subpart during this period.

(1) At the end of 16 weeks from the date the CISWI or air curtain incinerator started operation within the boundaries of the current emergency or disaster declaration area, you must cease operation of the unit or comply with all requirements of this subpart, unless the Administrator has approved in writing your request to continue operation.

(2) If the Administrator has approved in writing your request to continue operation, then you may continue to operate the CISWI or air curtain incinerator within the boundaries of the current emergency or disaster declaration area until the date specified in the approval, and you do not need to comply with any other requirements of this subpart during the approved time period.

[FR Doc. 2025–16360 Filed 8–25–25; 8:45 am]

BILLING CODE 6560–50–P

---

## DEPARTMENT OF HEALTH AND HUMAN SERVICES

### 42 CFR Part 52c

**[Docket No. NIH–2025–0001]**

**RIN 0925–AA72**

## Terminating National Institutes of Health Minority Biomedical Research Support Program and Rescinding the Program's Related Regulation

**AGENCY:** National Institutes of Health, Department of Health and Human Services.

**ACTION:** Final rule.

**SUMMARY:** The Department of Health and Human Services (HHS), in consultation with the National Institutes of Health (NIH), is repealing the regulation relating to the Minority Biomedical Research Support (MBRS) program in compliance with Executive Order (E.O.) 14173 (*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*) and E.O. 14151 (*Ending Radical and Wasteful Government DEI Programs and Preferencing*), and to abide by Supreme Court precedent. HHS remains committed to ensuring equal treatment under the law throughout its grant programs.

**DATES:** This final rule is effective September 25, 2025.

**FOR FURTHER INFORMATION CONTACT:** Matthew Zorn, Deputy General Counsel, U.S. Department of Health and Human Services, Office of the General Counsel, 200 Independence Avenue SW, Washington, DC 20201. Telephone: